# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**MARLOWE PATENT HOLDINGS LLC,** :
                                 :
   **Plaintiff,**                :
                                 :
   v.                            :
                                 :
**DICE ELECTRONICS, LLC, et al.,** :
                                 :
   **Defendants.**               :

_____

**Civil Action No.: 10-1199 (PGS)**


**MEMORANDUM OPINION
AND ORDER**

<u>**ARPERT, U.S.M.J.**</u>

## I.   INTRODUCTION

This matter comes before the Court on a Motion by Defendant LTI Enterprises, Inc. d/b/a

USA SPEC ("LTI") for leave to file an Amended Counterclaim pursuant to FED. R. CIV. P. 15

[dkt. entry no. 171].   Plaintiff Marlowe Patent Holdings LLC ("Plaintiff") has opposed this

Motion.  *See* dkt. entry no. 175.

This matter also comes before the Court on a Motion by Plaintiff for leave to conduct

additional discovery, file Amended Claim Construction Briefs and for entry of an Amended

Scheduling Order [dkt. entry no. 172].   Defendants LTI and Precision Interface Electronics, Inc.

("PIE") (collectively, "Defendants") have opposed this Motion.  *See* dkt. entry nos. 174 & 179.

For the reasons stated below, LTI's Motion is **GRANTED** and Plaintiff's Motion is

**DENIED**.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 5, 2010, Plaintiff filed a Complaint against Defendants alleging infringement

of U.S. Patent No. 7,489,786 ("'786 patent"), a patent issued to Mr. Ira Marlowe for an invention

entitled, "Audio Device Integration System" which Mr. Marlowe subsequently assigned to

Plaintiff. *See* Pl.'s Comp., dkt. entry no. 1 at 1-5; *see also* Pl.'s Amended Compl., dkt. entry no. 142 at 1-5. Plaintiff claims that the '786 patent pertains to a device that enables after-market audio products such as a CD player to be connected to and controlled by an existing audio system in an automobile. *Id*. at 2-3. Plaintiff alleges that Defendants sell devices that infringe the claims of the '786 patent. *Id*. at 3-4.

On April 21, 2010, LTI filed an Answer denying Plaintiff's allegations and a Counterclaim seeking a declaratory judgment of non-infringement and invalidity. *See* LTI's Answer, dkt. entry no. 8 at 1-7. Likewise, on June 23, 2010, PIE filed an Answer and Counterclaim. *See* PIE's Answer, dkt. entry no. 45 at 1-10.

### III.    LTI's Motion

#### A.    **LTI's Arguments in Support of its Motion to Amend**

LTI seeks leave to file an Amended Counterclaim to add a claim for inequitable conduct based on its recent discovery of certain prior art, evidence of which was allegedly deleted from an internet archive site at the direction of Plaintiff's owner, Mr. Marlowe. *See* Def.'s Br., dkt. entry no. 171-1 at 1. LTI contends that because "[t]he instant action originally included an affirmative defense that inequitable conduct in the procurement of the [patent-in-suit] rendered the [patent] unenforceable", Plaintiff "has been aware of this issue since LTI filed its Answer". *Id*.

LTI notes that Plaintiff "is wholly owned and controlled by [Mr.] Marlowe…[,] the sole inventor listed on [the '786 patent]", that Mr. Marlowe "assigned the rights [to] the '786 patent to his company Blitzsafe of America, Inc. ("Blitzsafe") on December 13, 2002", that "Blitzsafe assigned those rights back to [Mr.] Marlowe" on August 29, 2005, and that Mr. Marlowe "assigned [his] right[s] [to] the '786 patent to Plaintiff on March 4, 2010, the day before this

lawsuit was filed". *Id.* at 1.  As a result, LTI claims, Mr. Marlowe "was intimately familiar with the design of Blitzsafe products sold and offered for sale in the United States more than one year before the filing date of the '786 patent". *Id.*  Claiming that it was not able to locate or "review any Blitzsafe products from…the time the '786 patent was filed" until April 2012, LTI states that it "acquired…a Blitzsafe audio interface bearing product number CHY/ALPDMXV.1A" from a third party on April 4, 2012. *Id.* at 2.  Thereafter, during his deposition on April 9, 2012, Mr. Marlowe "opened the Blitzsafe CHY/ALPDMXV.1A audio interface and found that the circuit board inside was dated 2001". *Id.*  After Mr. Marlowe's deposition, LTI tested the Blitzsafe product and ascertained that the Blitzsafe product produced a "device presence signal" and, therefore, "anticipated all of the limitations of at least one claim of the '786 patent". *Id.*

In addition, LTI maintains that during his deposition, Mr. Marlowe "confirmed that…Blitzsafe asked archive.org to take down old Blitzsafe webpages" after the start of this litigation despite previously claiming that "Blitzsafe had no paper records before 2005 due to a flood and no computer records due to a file server problem". *Id.*  LTI "first learned that there [was] a backup to archive.org" on April 24, 2012 and, thereafter, "was able to locate an old Blitzsafe web page showing that a Blitzsafe CHY/ALPDMXV.1A audio interface was on sale in the U.S. more than one year before the filing date of…[the '786 patent]". *Id.*  Based on this information, on April 26, 2012, LTI informed Plaintiff's counsel, then Jeffrey Kaplan, Esq. ("Kaplan"), that it intended to move to amend its Counterclaim to add a claim for inequitable conduct.

### 1.   Good cause exists to modify the Scheduling Order to permit the amendment.

LTI notes that FED. R. CIV. P. 16(b)(4) "provides that a scheduling order may be modified only for good cause and with the judge's consent" and contends that, in this instance, good cause

exists.  *Id*.  LTI further notes that it "should not be prejudiced because [Mr.] Marlowe deleted evidence of Blitzsafe's own prior art products and it took until after the Scheduling Order to locate the evidence from third parties".  *Id*.  Citing *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 350 (3d Cir. 2000) and *Dimensional Communications, Inc. v. OZ Optics, Ltd.*, 148 Fed. Appx. 82, 85 (3d Cir. 2005), LTI notes that "the Third Circuit requires a showing of good cause in order to amend" after a pleading deadline has passed and maintains that "'good cause' exists when the ordered schedule cannot reasonably be met despite the diligence of the party seeking the extension".  *Id*. at 4-5.  Finally, citing *Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-89 (D. Del. 2003) and *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *5 (D. Del. 2009), Plaintiff notes that FED. R. CIV. P. 9(b) "requires that claims of inequitable conduct in patent cases be plead with particularity" and that "the pleading party is possibly required to confirm the factual allegations through discovery".  *Id*. at 5.  "LTI's proposed amendment is based on a new set of facts that could not be adequately confirmed prior to the Scheduling Order's deadline for amended pleadings".  *Id*.

LTI argues that it "acted diligently in pursuing the inequitable conduct claim and in discovering facts necessary to plead it with particularity".  *Id*.  "LTI first acquired a Blitzsafe CHY/ALPDMXV.1A audio interface from a third party on or around April 4, 2012" because "[p]rior to that time, despite diligent efforts, LTI had not been able to review any Blitzsafe products from prior to the December 11, 2002 filing date of the '786 patent".  *Id*.  Thereafter, LTI "had to depose [Mr.] Marlowe regarding the characteristics of the Blitzsafe CHY/ALPDMXV.1A audio interface" and "[i]t then took LTI less than two weeks to locate a radio to test the Blitzsafe CHY/ALPDMXV.1A audio interface and determine that the interface produced a device presence signal and therefore anticipated all of the limitations of at least one

4

issued claim of the '786 patent".  *Id*. at 5-6.  Notably, "LTI was not able to confirm that the Blitzsafe CHY/ALPDMXV.1A audio interface was on sale more than one year prior to the filing date of the '786 patent until April 24, 2012" because Plaintiff allegedly had no documents regarding the sale of its products prior to 2005. *Id*. at 6.  During his deposition, LTI maintains, Mr. Marlowe "confirmed that after the start of this litigation, Blitzsafe asked archive.org to take down old Blitzsafe webpages from prior to 2005 despite claiming that Blitzsafe had no paper records before 2005 due to a flood and no computer records due to a file server problem". *Id*.

"Within a week after having discovered the facts necessary to plead its inequitable conduct claim with particularity, LTI sought to meet and confer with Plaintiff's counsel". *Id*. Thereafter, LTI notes, "Plaintiff's counsel immediately moved to withdraw" and, as a result, "these proceedings were essentially frozen while Plaintiff sought and retained new counsel". *Id.* LTI points out that it informed the Court of its intention to file this motion during the Court's June 27, 2012 status conference. *Id*.  As such, LTI argues that "any delay after LTI had discovered the facts necessary to plead its inequitable conduct claim with particularity was caused by the withdrawal of Plaintiff's counsel…." *Id*. at 6-7.

### 2.      Leave to amend the Counterclaim should be granted.

LTI maintains that "[t]here has been no undue delay or bad faith and Plaintiff cannot credibly argue any prejudice when inequitable conduct was raised as an affirmative defense in LTI's Answer and when a claim for inequitable conduct was pled by PIE in its Counterclaim". *Id*.  LTI contends that "[t]he additional claim for inequitable conduct should not require Plaintiff to conduct any additional discovery", to "expend significant additional resources preparing for trial", or create "any delay to resolution of the dispute or prevent Plaintiff from bringing a timely motion in another jurisdiction". *Id*.  Citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

1312, 1327 (Fed. Cir. 2009), LTI maintains that its proposed Amended Counterclaim "contains a claim for inequitable conduct that has been pled with the required particularity" pursuant to FED. R. CIV. P. 9(b) by identifying "the specific who, what[,] when, where and how of the material misrepresentation or omission committed before the USPTO" and that is "certainly not futile". *Id*. For these reasons, LTI claims that it "should be granted leave to amend its counterclaim to add a claim for declaratory judgment of inequitable conduct". *Id*. at 9.

### B.    Plaintiff's Arguments in Opposition to LTI's Motion to Amend

Plaintiff contends that the Court should deny LTI's Motion because it is seeking leave to "assert a futile and frivolous claim". *See* Pl.'s Opp'n Br., dkt. entry no. 175 at 1. Plaintiff notes that its patent shall be "presumed valid" and that "[t]he party challenging the patent bears the burden of proving by clear and convincing evidence the invalidity or unenforceability of the claims of a patent". *Id.* at 2.

Plaintiff further maintains that "[i]t is not enough to establish that the patent applicant had a generalized intent to deceive or withhold" but rather, pursuant to *Schering Corp. v. Mylan Pharmaceuticals, Inc.*, 2012 WL 1473329, at *11 (D.N.J. 2012), "a 'specific intent' to deceive must be proven by demonstrating by clear and convincing evidence 'that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it'". *Id.* at 3.

In addition, Plaintiff contends "[t]he prosecution of the…['786 patent] application required more than six (6) years and no less than 170 individual pieces of patent and non-patent prior art were disclosed and/or submitted to the USPTO during the prosecution and examination of the application". *See* Decl. of Marlowe, dkt. entry no. 175-2 at 2. Mr. Marlowe references the prior art cited in the patent and maintains that it demonstrates that he "undertook exhausting and painstaking efforts to disclose all relevant art to the USPTO". *Id.* at 3-12.

Mr. Marlowe also maintains that Blitzsafe "never sold any product that incorporated any patented technology asserted in this litigation prior to the critical date" of December 11, 2001 ("Critical Date"). *Id.* Further, he maintains the patented technology was not publically revealed until it was launched in joint venture with XM Satellite Radio at the 2002 Consumer Electronics Show ("CES") in Las Vegas, Nevada in January 2002". *Id.* Mr. Marlowe contends that "[p]rior to CES, there was no public disclosure of any kind of any technology covered by the patent asserted in this litigation...including within any Blitzsafe product" and that "[i]t was only after CES 2002...that Blitzsafe began working toward selling and eventually did sell interface products that incorporated various technologies...[which are] the subject of the patent". *Id.* at 14.

Mr. Marlowe asserts that LTI's allegation of inequitable conduct is based on a single Blitzsafe interface product identified as CHY/ALPDMXV.1A. Mr. Marlowe states that as Blitzsafe designed various circuit boards for its products, it stamped those boards with a copyright notice of the year in which the particular board was designed. *Id.* at 15. "The CHY/ALPDMXV.1A product upon which LTI places all of its reliance in support of its 'inequitable conduct' allegation was apparently designed in or about 2001"; however, the copyright stamp on the circuit board means nothing in terms of when the associated Blitzsafe product was actually sold except that the product could not have been sold before the date stamped on the circuit board. *Id.* at 15-16.

Mr. Marlowe also argues that "LTI produced photographs of the circuit board of the CHY/ALPDMXV.1A Blitzsafe interface product" and, although "a cable blocks a full view of the top of [the] microcontroller chip in that circuit board", he contends "it is either a Microchip Technology, Inc. ("MTI") 'PIC16F628' or "PIC16F628A'" based on "the unique footprint of

that chip". *Id*. at 17.   Regardless of which MTI microcontroller chip is present in the Blitzsafe product relied upon by LTI, Mr. Marlowe argues, "the date stamp on that chip shows that the year that it was manufactured was 2002" which is further proof that the CHY/ALPDMXV.1A Blitzsafe interface product relied upon by LTI was sold after, not before, December 11, 2001. *Id*. at 18. Further, with respect to the circuit board used in the Blitzsafe product, Mr. Marlowe maintains that it was not produced for Blitzsafe by the board manufacturer until 2002. *Id*. at 19.

Plaintiff claims that there is "absolutely no evidence whatsoever to support any claim of 'inequitable conduct'" based upon Mr. Marlowe's analysis of the Blitzsafe product. Rather, Plaintiff contends, all available evidence demonstrates that the Blitzsafe product, and Blitzsafe's sale thereof, do not support an 'inequitable conduct' claim "as a matter of law" such that LTI's "futile and frivolous claim should not be allowed". *Id*. at 4.

Finally, Mr. Marlowe claims that he "understand[s] that making [a request] to a web archiving site to remove its archived files of Blitzsafe's web site" during this litigation "was a mistake". *Id*.  at 21.   Nonetheless, Mr. Marlowe maintains that "the effect of [his] request has caused no harm, foul or prejudice to LTI or any other party" because "there are other web archives…[that] were not affected".  *Id*.  Mr. Marlowe asserts that other "archived versions of Blitzsafe's internet web site have remained…throughout the entire pendency of this litigation…freely and fully available to LTI…and anybody else who so desires to view those sites". *Id*. at 22.   Mr. Marlowe believes that suggestions "by LTI that its discovery efforts have been hampered by [Mr. Marlowe] are not entirely truthful" given that "LTI has accessed such other sites throughout this litigation" and "[o]ld Blitzsafe internet web site pages were used at [his] deposition". *Id*.

### C.   <u>Legal Standards</u>

#### 1.   Leave to File an Amended Counterclaim

Pursuant to FED. R. CIV. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires" (*see also Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)) and that the decision to grant a motion to amend a pleading rests in the sound discretion of the district court (*see also Zenith Radio Corp. v. Hazeltine Research*, Inc., 401 U.S. 321, 330 (1970); *see also Morton International, Inc. v. A.E. Staley Manuf. Co.*, 106 F. Supp. 2d 737, 744 (D.N.J. 2000)). Further, the Court notes that it "has discretion to deny the request only if the party's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party". *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arthur v. Maersk, Inc*., 434 F.3d 196, 204 (3d Cir. 2006); *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Delay becomes "undue", and thereby creates grounds for the district court to refuse to grant leave, when it places an unwarranted burden on the Court, when the movant has had previous opportunities to amend, or when it becomes prejudicial to the opposing party. *See Adams*, 739 F.2d at 868; *see also Cureton v. NCAA*, 252 F.3d 267, 273 (2001). "[T]he Third Circuit has consistently recognized that 'prejudice to the non-moving party is the touchstone for the denial of an amendment'". *Schindler Elevator Corp. v. Otis Elevator Co*., 2009 U.S. Dist. LEXIS 40994, at *9 (D.N.J. 2009); *see also Arthur*, 434 F.3d at 204 (*quoting Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). "In determining what constitutes prejudice, the Second Circuit considers 'whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another

jurisdiction". *Long v. Wilson*, 393 F.3d 390, 400 (3d Circ. 2004); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). The Third Circuit has "endorse[d] the Second Circuit approach". *Id.*

The Court notes that "in determining the futility of an amendment, ...[it] applies the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)" and "accept[s] as true all factual allegations contained in the proposed amended [pleading] and any reasonable inferences that can be drawn from them". *Walls v. County of Camden*, 2008 U.S. Dist. LEXIS 92940, at *6-7 (D.N.J. 2008); *see also Medpointe Healthcare, Inc. v. Hi-Tech Pharm. Co., Inc.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). "[I]f the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend" but where the "proposed amendment is not clearly futile, then denial of leave to amend is improper". *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990); *see also Crete v. Resort Condos., Int'l, LLC*, 2011 U.S. Dist. LEXIS 14719, at *31-32 (D.N.J. 2011); *Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993). The Court "determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to [the moving party]". *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

### 2.    Inequitable Conduct

"[I]t is well established that patent applicants 'have a duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty". *AstraZeneca Pharms. LP v. Teva Pharms. USA*, 567 F. Supp. 2d 683, 691 (D.N.J. 2008); *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed Cir. 2007). "A breach of this duty

constitutes inequitable conduct and renders the entire patent unenforceable" and "can arise from 'an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive or mislead the [USPTO]".  *Id.*; *see also Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1128 (Fed. 2006).

The Court notes that "[t]he substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the [US]PTO".  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009); see also *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 1181 (Fed. Cir. 1995); 37 C.F.R. § 1.56 (2008).  Further, "[t]he relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the [US]PTO".  *Id.*; *see also Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996); *Molins*, 48 F.3d at 1181.

Pursuant to FED. R. CIV. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally".  "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)" (*Id*. at 1326-27; *see also Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)) such that "[a] pleading that simply avers the substantive elements of inequitable conduct…without setting forth the particularized factual

11

bases for the allegation…does not satisfy Rule 9(b)" (*Id.*; *see also King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981)).  "In sum, to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO".  *Id.* at 1328.  "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [US]PTO".  *Id.* at 1328-29.

    **D.**    **Conclusion**

In this case, LTI has demonstrated that good cause exists to permit the assertion of its affirmative claim of inequitable conduct. Thus, the Court will grant its Motion.

First, LTI was diligent in moving to amend its Counterclaim following discovery of new information to support its claim. The backup information, which LTI claims indicates Plaintiff's product was on sale for more than one year before the patent was filed, was not discovered until April, 2012. Following discovery of this information, LTI sought to meet and confer with Plaintiff's counsel. Plaintiff's counsel thereafter moved to withdraw from his representation in this action. Thus, any delay in filing the instant Motion cannot be attributed to LTI.

Second, Plaintiff will not be prejudiced if LTI's Motion is granted. Plaintiff has been aware of such a claim since this action's inception. LTI itself raised inequitable conduct as an affirmative defense in its Answer and a similar counterclaim was plead by PIE. Therefore, the proposed Counterclaim will not require Plaintiff to conduct any additional discovery or expend

significant additional resources beyond what would otherwise be required. Nor will it cause any significant additional delay in the resolution this matter.

Finally, the proposed Counterclaim is not clearly futile. Taking the facts as pled, and viewing them in the light most favorable to LTI, the Court cannot conclude that the proposed Counterclaim is legally insufficient on its face. The existence of PIE's parallel Counterclaim further bolsters this point. "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Here, LTI has adequately pled the '*who'* (Plaintiff); '*what'* (Plaintiff was aware of the Blitzsafe CHY/ALPDMXV.1A); '*whe*n' and '*where*' (Blitzsafe CHY/ALPDMXV.1A was on sale in the U.S. more than one year prior to the filing date of the '786 Patent ); and '*how*' (Plaintiff misled the PTO by deleting evidence of prior art from archive.org). For these reasons, LTI's Motion is **GRANTED**.

## IV.   Plaintiff's Motion

### A.   <u>Plaintiff's Arguments in Support of its Motion</u>

Prior to the commencement of this suit, Mr. Marlowe retained Jean-Marc Zimmerman, Esq. ("Zimmerman") to represent his interests. On Mr. Zimmerman's recommendation, Plaintiff also retained Mr. Kaplan to serve as Zimmerman's co-counsel. *See* Decl. of Marlowe, dkt. entry no. 172-2 at 2.  Mr. Marlowe asserts that he had no prior relationship with Mr. Kaplan and "his relationship with Mr. Kaplan was "strained" due to lack of communication, failure to articulate legal strategy, and his failure to include Mr. Marlowe in the litigation process. *Id.*  More specifically, Mr. Marlowe maintains that Mr. Kaplan did not consult with him, that he would "prepare and file documents without [Mr. Marlowe's] input or participation…including the

*Markman* briefs and other discovery issues and matters", and that Mr. Marlowe's "efforts to participate in this litigation were futile". *Id*. at 2-3. Mr. Marlowe believes that Mr. Kaplan's decisions have hampered Plaintiff's ability to test LTI's claims of invalidity and enforceability. *Id*. He further contends that only after Mr. Kaplan withdrew and Plaintiff retained new counsel did he "appreciate the magnitude of the inadequacy of the outstanding discovery issues and other matters, including Plaintiff's claim construction (*Markman*) submissions". *Id*.

Plaintiff's new counsel, Richard J. Catalina, Jr., Esq. ("Catalina"), states that "Plaintiff is not asking to completely re-open discovery, amend pleadings or otherwise set this litigation back in [any] significant manner". *See* Decl. of Catalina, dkt. entry no. 172-1 at 2-3. Rather, Mr. Catalina maintains, "Plaintiff is merely seeking to complete certain outstanding discovery, follow-up on matters that have only recently been revealed by…LTI, file Amended/Supplemental Claim Construction briefs on the grounds that Plaintiff's principal…was not permitted by Mr. Kaplan to participate in that process in any meaningful manner, and place this litigation back on [a] sound track that would allow Plaintiff to fairly, rightly litigate its infringement claims and be entitled [to] its day in Court". *Id*. at 3-4. Mr. Catalina claims that "granting Plaintiff the relief requested herein should refine the issues in this litigation – including the issues to be determined at trial – and further streamline the issues and matters for the Markman hearing and summary judgment motions, and – with hope – facilitate settlement". *Id*. at 4.

Specifically, Plaintiff seeks the following:

(1) Discovery with respect to LTI:

      A.      Deposition of Jimmy Zhang, Chief Engineer of LTI.

      B.      Production for inspection, investigation and testing of certain Blitzsafe products upon which LTI bases its

claims of invalidity, unenforceability and/or other alleged inequitable conduct.

C.      Production for inspection, investigation and testing the LTI which were the subject of the video files identified "LTI-521" and "LTI- 522" which were created and produced by LTI and which LTI bases its claims of invalidity, unenforceability and/or other alleged inequitable conduct

D.      Production on any other product upon which LTI claims invalidity, unenforceability and/or other alleged inequitable conduct.

E.      Production of the "third video" produced by LTI's Chief Engineer, Jimmy Zhang, as testified to by Evan Trieu during his deposition on April 5, 2012.

F.      Production of high resolution, color photographs of all products identified above, including all electronic circuitry and macro shots of the fronts and backs of all circuit boards of said products.

(2) Discovery with respect to PIE:

A.      Deposition of PIE's Rule 30(b)(6) representative.

B.      Production of any Blitzsafe product and/or other prior art upon which PIE bases its claims of invalidity, unenforceability and/or other alleged inequitable conduct.

C.      Production of any PIE products upon which PIE bases any claims of invalidity, unenforceability and/or other alleged inequitable conduct by Plaintiff.

D.      Production of any other product upon which PIE bases any claim of invalidity, unenforceability and/or other alleged inequitable conduct.

(3) *Markman* briefing and Amended Scheduling Order:

A.      Following the completion of the additional discovery, Plaintiff seeks leave to file Supplemental and/or Amended Claim Construction Briefs.

B.      Following completion of the *Markman* Hearing, allowing the Parties leave to file motions for summary judgment based on the Court's claim construction rulings.

C.      Following the completion of the *Markman* Hearing Plaintiff seeks leave to conduct discovery as to its damages.

*See* Pl.'s Proposed Form of Order, dkt. entry no. 172-4.

Here, Plaintiff argues that "ample good cause exists…to modify the pre-trial schedule (which was already amended *de facto* upon the withdrawal of Plaintiff's prior counsel…) and grant the specific relief requested by Plaintiff in this application" given that "little additional…delay will be caused" as a result thereof.  *Id*. at 2.  Plaintiff asserts that its request "is not being made in bad faith", that "any delay was [not] 'willful'", that "overwhelming good cause exists…as set forth in [Plaintiff's] supporting Declarations, and that Plaintiff "is pursuing this request diligently".  *Id*. at 5.

**B.      LTI's Arguments in Opposition to Plaintiff's Motion**

In opposition, LTI asserts that "Plaintiff has not shown good cause for such extraordinary relief…and should not be permitted to have a do-over of the case simply because of its purported dissatisfaction with former counsel".  *See* LTI's Opp'n Br., dkt. entry 174 at 1.  LTI also asserts that "[i]n seeking to withdraw from [this] case, Mr. Kaplan repeatedly argued…that his withdrawal would not cause any undue delay or disruption to the case because the claim construction briefing had closed and discovery was all but complete…save [for] one deposition of PIE's principal" and, on this basis, "LTI did not oppose Mr. Kaplan's withdrawal".  *Id*. at 6.

**1.      Plaintiff does not have good cause to re-open discovery.**

Here, despite the fact that Plaintiff "argues in broad strokes that it has 'good cause' to reopen discovery", LTI maintains that Plaintiff "does not provide any evidence to support this general conclusion", does not point to "any newly discovered facts…which could not have been

16

discovered earlier despite its diligence", and therefore has not demonstrated any justification to "warrant the taking of depositions which Plaintiff…deliberately chose not to take…or…[to] conduct additional discovery after discovery has been closed for more than three months".  *Id.* at 7-8.  LTI asserts that it has "met its obligations under Rule 26…and continues to meet its Rule 26 obligations" given that it "disclosed the existence of…[newly discovered] devices immediately upon…location and/or acquisition thereof", "made such devices available to Plaintiff and/or its counsel for inspection", and "in the case of LTI's devices…[made such devices available for] testing".  *Id.* at 8. Further, "[t]he fact that LTI continues to uncover favorable evidence through no help of Plaintiff is not grounds for Plaintiff to reopen discovery".  *Id*.

LTI also claims that "aside from the issue of reopening discovery, Plaintiff has offered no reason why it should be permitted to amend its claim construction brief nearly seven months after its filing and after the parties had taken pains to meet-and-confer over the terms to be constructed and to narrow the focus of claim construction".  *Id.* at 9.  Finally, LTI maintains that Plaintiff has failed to "explain why an additional extended period for damages discovery is warranted, especially where LTI has already produced the requested documents without objection from Plaintiff".  *Id*

### 2.   Dissatisfaction with prior counsel is not good cause to relitigate.

LTI claims that because Plaintiff is "[u]nable to articulate any good cause to support the reopening of discovery or claim construction", Plaintiff seeks "to sever itself from its former counsel" and argues now "for the first time…that it disagreed with Mr. Kaplan's handling of the case".  *Id.* at 9-10.  LTI argues that "Plaintiff's dissatisfaction with Mr. Kaplan's performance, however, is not grounds for Plaintiff to completely relitigate the case with new counsel".  *Id.* at

10.  Citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962), *Smith v. Ayer*, 101 U.S. 320, 326 (1880), and *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (1993), LTI contends that "[t]he law is clear that a party to litigation is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney" such that there is "no merit to the contention that a dismissal of…[a] claim based on counsel's unexcused conduct would impose an unjust penalty on the client".  *Id*.  LTI maintains that after a party "voluntarily chose…[his/her] attorney as his[/her] representative in…[an] action, …he[/she] cannot…[subsequently] avoid the consequences of the acts or omissions of this freely selected agent".  *Id*.  "To that end, retention of new counsel is not alone sufficient to show good cause to modify the court's scheduling order".  *Id*.; *see also Buchanan County v. Blankenship*, 545 F. Supp. 2d 553, 555 n.2 (W.D. Va. 2008).

LTI argues that "Plaintiff freely selected Mr. Kaplan to be its representative in the action and in more than two years of litigation did not raise any objection to Mr. Kaplan's handling of the case".  *Id*.  "Only after Mr. Kaplan had successfully withdrawn from representation…and…Plaintiff's [retained]…new counsel…did Plaintiff argue…for the first time…that [it] was denied meaningful participation in the litigation".  *Id*. at 10-11.

### 3.   Defendants will be unduly prejudiced by Plaintiff's request for a do-over.

Citing *Parker*, 204 F.3d at 339-40, LTI maintains that "some degree of certainty is both necessary and desirable in litigation" in order that "[a]t some point, the parties and claims…[are] fixed so that the case may proceed".  *Id*.  Noting that Plaintiff has pointed to LTI's motion for leave to amend its counterclaim as justification to re-open discovery, LTI argues that "[t]he two motions are not related and should not be confused" given that "LTI's motion is based upon

newly discovered evidence…that was previously unavailable to LTI" while "Plaintiff's motion has been made…because its newly retained attorney does not agree with the handling of the case by former counsel". *Id*. Further, despite being "aware of…[Mr.] Kaplan's application [to withdraw]" and his representation "that there would be no disruption to the progress of [this] case because claim construction briefing had closed and discovery was all but complete", Plaintiff "did not object to Mr. Kaplan's characterization of the case status". *Id*. "Had LTI been aware of Plaintiff's intention to reopen discovery, to reshape claim construction, and to essentially relitigate the case with new counsel, it most certainly would not have consented to Mr. Kaplan's withdrawal". *Id*. at 12.

In short, LTI argues that "Defendants would be unduly prejudiced by the broad relief sought by Plaintiff…which would effectively eviscerate two-and-a-half years worth of work and progress in [this] litigation". *Id*.

### C.   **PIE's Arguments in Opposition to Plaintiff's Motion**

PIE maintains that "from the very beginning", Plaintiff "pursued [this] case with the intent of minimizing [its] expenses while maximizing…Defendants' expenses" by submitting "extraordinarily broad infringement contentions" and "claiming that…PIE infringed upon dozens of claims within the patent while identifying only a single PIE product [that] allegedly infring[ed]". *See* PIE's Opp'n Br., dkt. entry no. 179 at 1-2. PIE contends that Plaintiff "continued in this fashion for two years of litigation", expressing "no concern about…counsel or the direction of [this] litigation until after [Mr. Marlowe's] deposition". *Id*. at 2. During his deposition, Mr. Marlowe "admitted that he had willfully destroyed all of the electronic evidence relating to his prior art and had lost the bulk of the documentary evidence in a 'flood' for which no insurance claim was filed…and about which no paperwork exists". *Id*.

PIE contends that Plaintiff "has averred no facts, and made no argument, in favor of 'good cause' or re-opening discovery other than a vague, generalized allegation of malpractice by…prior counsel, an issue that has no bearing on whether this case should be re-set at the expense of Defendants". *Id*.

### D.   **Legal Standards**

#### 1.   **Lawyer-Agent Relationship**

The Court notes that a litigant "voluntarily…[chooses his] attorney as his representative in [an] action…and he cannot…avoid the consequences of the acts or omissions of this freely selected agent". *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). Indeed, "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney'". *Id*. at 634 (*quoting Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *see also Houseknecht v. Brulo*, 2011 U.S. Dist LEXIS 6522, *5 (E.D. Pa. 2011). "The Supreme Court has made it clear that the neglect of the attorney is to be treated as the neglect of the client". *Mayfield v. Vanguard S&L Ass'n*, 1989 U.S. Dist. LEXIS 11017, at *5 (E.D. Pa. 1989).

"Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has – and must have – full authority to manage the conduct of the trial". *Hudson v. Pennsylvania*, 2009 U.S. Dist. LEXIS 3964, at *30 (E.D. Pa. 2009) (*quoting New York v. Hill*, 528 U.S. 110, 114 (2000)); *see also Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988). "As to many decisions pertaining to the conduct of the trial, the [party] is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney". *Id*. "Thus, decisions by counsel

are generally given effect as to what arguments to pursue, …what evidentiary objections to raise, …and what agreements to conclude regarding the admission of evidence…".  *Id.* at 30-31; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Henry v. Mississippi*, 379 U.S. 443, 451 (1965); *United States v. McGill*, 11 F.3d 223, 226-27 (1st Cir. 1993).

### 2. Modification of a Scheduling Order, Re-Open Discovery, and Leave to File an Amended Claim Construction Briefs

The Court notes that pursuant to FED. R. CIV. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent".  "A determination of good cause depends on the diligence of the moving party" where "[t]he moving party has the burden of demonstrating that despite its diligence, it could not reasonably have met the scheduling order deadline".  *Spring Creek Holding Co. v. Keith*, 2006 WL 2403958, at *3 (D.N.J. 2006); *see also GlobespanVirata, Inc. v. Texas Instruments, Inc.*, 2005 WL 1638136, at *3 (D.N.J. 2005); *Hutchins v. United Parcel Service, Inc.*, 2005 WL 1793695, at *3 (D.N.J. 2005).  "[L]ack of prejudice to the nonmovant does not show 'good cause'".  *GlobespanVirata*, 2005 WL 1638136, at *3; *see also Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

The Court notes, generally, that "the factors to be considered in resolving" whether to re-open discovery are whether there was "bad faith on the part of the party seeking to call witnesses not listed in...[a] pretrial memorandum", the "ability of the party to have discovered the witnesses earlier", the "validity of the excuse offered by the party", the "willfulness of the party's failure to comply with the court's order", "the parties' intent to mislead or confuse his adversary", "and...the importance of the excluded testimony".  *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).  "[E]xclusion of critical evidence is an extreme sanction...not normally to be imposed absent a showing of willful deception or

flagrant disregard of a court order by the proponent of the evidence". *Id.* at 905; *see also Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977).

The Court notes that when determining "if withheld evidence should be excluded", factors that have been considered include "(1) the importance of the information withheld[,] (2) the prejudice or surprise to the party against when the evidence is offered[,] (3) the likelihood of disruption at trial[,] (4) the possibility of curing the prejudice[,] (5) the explanation for the failure to disclose[,] and (6) the presence of bad faith or willfulness in not disclosing the evidence". *Ajax Enterprises v. Fay*, 2007 WL 1456201, at *2 (D.N.J. 2007); *see also Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 2938723, at *3-4 (D.N.J. 2006). "The burden of establishing substantial justification and harmlessness is on the party that failed to make the required disclosure". *Id.*; *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 2007 WL 979854, at *12 (D.N.J. 2007); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

## E. <u>Conclusion</u>

In this case, Plaintiff has not demonstrated that good cause exists to permit the relief sought. Thus, the Court will deny Plaintiff's Motion.

Plaintiff's Motion appears to stem almost entirely from the withdrawal of previous counsel. *Ex post facto* disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause. The decision to retain Mr. Kaplan was Plaintiff's at the outset. It was similarly Plaintiff's obligation to monitor and approve Mr. Kaplan's proposed strategies and decisions throughout the course of this two and half year old litigation. Here, Plaintiff ratified—whether by action or inaction—Mr. Kaplan's decisions through claim

construction briefing and completion of discovery, as set by the Scheduling Order. It was not until two months after discovery had closed that Plaintiff filed the instant Motion.

Perhaps more importantly, Plaintiff's request would require substantial additional discovery and would undoubtedly result in additional expense, inconvenience and delay for all concerned. The course of this litigation was set long ago. The parties relied on Plaintiff's representations throughout; to allow Plaintiff to unilaterally change the course of this action now would be inappropriate. In short, the Court believes Plaintiff waited too long in moving for the relief now sought. Accordingly, Plaintiff's Motion for leave to conduct additional discovery, file Amended Claim Construction Briefs and for entry of an Amended Scheduling Order is **DENIED**.

## V.     CONCLUSION AND ORDER

Having reviewed the Parties' written submissions and considered the instant Motions pursuant to FED. R. CIV. P. 78, for the reasons set forth above;

**IT IS** on this 27th day of February, 2013,

**ORDERED** that LTI's Motion for leave to file an Amended Counterclaim pursuant to FED. R. CIV. P. 15 [dkt. entry no. 171] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion to conduct additional discovery, file Amended Claim Construction Briefs and for entry of Amended Scheduling Order [dkt. entry no. 172] is **DENIED**.

*/s/ Douglas E. Arpert___*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**